MOORE *v.* HALL, SECY. OF STATE.

5-1737                                    316 S. W. 2d 207

Opinion delivered September 29, 1958.

412

*Tom Gentry,* for plaintiff.

*Bruce Bennett, Atty. General,* for defendant; *Mehaffy, Smith & Williams,* by *B. S. Clark,* of counsel for defendant.

MINOR W. MILLWEE, Associate Justice. This is an original proceeding by Ruben Cleveland Moore, a citizen and taxpayer of this State, questioning the sufficiency of the popular name and ballot title of Proposed Constitutional Amendment No. 50 and to enjoin the Secretary of State from placing the proposed amendment on the ballot to be used in the general election on November 4, 1958.

The proposed popular name, ballot title and amendment read as follows:

(Popular Name)
"FREEDOM TO HIRE AMENDMENT"
(Ballot Title)
"AN AMENDMENT P R O H I B I T I N G PRACTICES THAT REQUIRE OR INDUCE AN EMPLOYER TO EMPLOY A GREATER NUMBER OF PERSONS THAN THE EMPLOYER DEEMS NECESSARY TO CARRY ON HIS BUSINESS."

(Amendment)

"BE IT ORDAINED BY THE PEOPLE OF THE STATE OF ARKANSAS THAT THE FOLLOWING SHALL BE AN AMENDMENT TO THE CONSTITUTION:

SECTION 1. Practices known as "featherbedding" are contrary to the public policy of this State.

SECTION 2. No employer may be required to employ a greater number of persons than the employer deems necessary to carry on his business. Courts of chancery are empowered to enjoin any person, association or corporation attempting, directly or indirectly, to require, induce, coerce, or compel an employer to employ a greater number of persons than the employer deems necessary to carry on his business.

Petitioner alleges and earnestly contends that the popular name and ballot title of the proposed amendment are insufficient and invalid because they do not convey a fair, full and reasonably intelligent idea of the scope and import of the measure to be voted on, and fail to give the elector information concerning the choice he is called on to make between the retention of the existing law and the substitution of the proposed amendment. It is also argued that they contain partisan coloring and fail to give the elector a fair idea of the far reaching effects of the measure; and that the popular name especially is invalid because it is calculated and intended to give exactly the opposite impression of the contents of the proposed amendment from the true contents thereof and to induce the electorate into believing that the proposed amendment does something that it does not do.

We recently restated the rules to be applied in determining the sufficiency of ballot titles in *Bradley* v. *Hall, Secretary of State,* 220 Ark. 925, 251 S. W. 2d 470: "On the one hand, it is not required that the ballot title contain a synopsis of the amendment or statute. *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884. It is sufficient for the title to be complete enough to convey an intelli-

gible idea of the scope and import of the proposed law. *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331. We have recognized the impossibility of preparing a ballot title that would suit every one. *Hogan* v. *Hall,* 198 Ark. 681, 130 S. W. 2d 716. Yet, on the other hand, the ballot title must be free from 'any misleading tendency, whether of amplification, or omission, or of fallacy,' and it must not be tinged with partisan coloring. *Walton* v. *McDonald,* 192 Ark. 1155, 97 S. W. 2d 81.

"It is evident that before determining the sufficiency of the present ballot title we must first ascertain what changes in the law would be brought about by the adoption of the proposed amendment. For the elector, in voting upon a constitutional amendment, is simply making a choice between retention of the existing law and the substitution of something new. It is the function of the ballot title to provide information concerning the choice that he is called upon to make. Hence the adequacy of the title is directly related to the degree to which it enlightens the voter with reference to the changes that he is given the opportunity of approving."

Petitioner argues that the ballot title is fatally defective in that it would repeal or render unconstitutional the so-called "Full Crew Laws" (Ark. Stats., Secs. 73-720, 723 and 726), and numerous other acts and regulations designed to safeguard the public safety and health, without enlightening the voter with reference to the drastic changes that he is given the opportunity of approving. While there may be considerable merit in this contention, we would not strike the ballot title down on that basis alone. In this connection it should perhaps be noted that Section 1 of the amendment condemns all practices known as "featherbedding." This term embraces numerous types of coercion of an employer by a labor union in which the employer is forced to pay for services not performed. "Featherbed rule" is defined in Webster's New International Dictionary (Second Edition) as follows: "A union rule requiring an employer to pay unneeded workmen, or to pay for unnecessary or duplicating jobs, or setting limits to the amount of

work that workmen may do in a day; for example, a rule requiring a union musician to be paid for standing by idle during the playing of records for broadcasting." Now the term "featherbedding" is not mentioned in the ballot title, which does not inform the voter that all such practices are condemned, but only those requiring more employees than are deemed necessary by the employer, who is made the sole judge of such necessity. While we may not be concerned with the wisdom of a measure that would require one man to do the work of three provided the employer deemed it necessary, this does not relieve the draftsman of the duty to provide an impartial summation of the measure in the ballot title without any misleading amplification, omission or partisan coloring.

When the above mentioned omissions are considered in connection with the proposed popular name, "Freedom to Hire", which is to be construed along with the ballot title in determining its sufficiency, we hold the ballot title defective and that the prayer of the petitioner should be granted. When the popular name is considered in the light of the true purpose of the proposed amendment which is actually to restrict and curtail the number and hiring of employees, we think it has a manifest tendency to mislead the voter and contains partisan coloring. "Freedom" is an enchanting and bewitching word to every citizen of a democracy. There is some merit in the suggestion that the proposed popular name might leave the erroneous impression with the voter that by passage of the amendment some new *freedom to hire* rather than *to refrain from hiring* would be brought about. Similar catch phrases and slogans which tend to mislead and to color the merit of a proposal on one side or the other have been rejected, or held fatally defective, by other courts. See *Say* v. *Baker,* 137 Colo. 155, 322 P. 2d 317; *In re Petition of Idaho State Federation of Labor,* 75 Idaho 367, 272 P. 2d 707.

The petition for an injunction is granted.