Ms. Pamela A. Moseley Attorney at Law, Hilburn Law Firm P.O. Box 5551 North Little Rock, Arkansas 72119
Dear Ms. Moseley:
This is in response to your request, pursuant to A.C.A.7-9-107 (Repl. 1993), for certification of the following proposed popular name and ballot title for a proposed constitutional amendment:[1]
(Popular Name)
ARKANSAS LOTTERY AND BINGO ONLY AMENDMENT
(Ballot Title)
 THIS PROPOSED AMENDMENT WOULD CREATE A STATE LOTTERY LAW WHICH AUTHORIZES THREE TYPES OF LOTTERY GAME ACTIVITIES IN ARKANSAS: (1) STATEWIDE LOTTERY TICKET GAMES (CALLED THE ARKANSAS LOTTERY), (2) LOTTERY VIDEO TERMINAL GAMES, AND (3) NON-PROFIT BINGO AND RAFFLE GAMES. IT WOULD ALLOW HORSE RACING OR GREYHOUND RACING AS IT NOW EXISTS. THE LAW WOULD CREATE A NINE-MEMBER ARKANSAS LOTTERY COMMISSION TO RUN THE ARKANSAS LOTTERY AND TO REGULATE THE LOTTERY VIDEO TERMINAL GAMES AND NON-PROFIT BINGO AND RAFFLE GAMES. A DIRECTOR OF THE ARKANSAS LOTTERY COMMISSION WOULD BE THE CHIEF EXECUTIVE OFFICER OF THE COMMISSION.
 THE ARKANSAS LOTTERY WOULD ALLOW PEOPLE TO BUY LOTTERY TICKETS FOR THE CHANCE TO WIN A CASH PRIZE. THE ARKANSAS LOTTERY COMMISSION WOULD CHOOSE THE TYPE OF LOTTERY TICKET GAMES TO BE PLAYED IN THE ARKANSAS LOTTERY AND WOULD CAREFULLY SELECT FROM OVER 6000 RETAILERS TO SELL THE LOTTERY TICKETS. NO TICKETS COULD BE SOLD TO MINORS OR ON CREDIT. THE MONEY FROM THE TICKET LOTTERY WOULD BE DIVIDED AS FOLLOWS: AVERAGE OF 50% TO PRIZES; AVERAGE OF 32% TO STATE LOCAL CAUSES, TO BE GIVEN TO CITY COUNTY POLICE/SHERIFFS, STATE EDUCATION, STATE PARKS AND TOURISM AND LOCAL CHARITIES; 10% TO RUN THE LOTTERY; 8% TO BUSINESSES WHICH SELL LOTTERY TICKETS.
 THE LOTTERY VIDEO TERMINALS WOULD ALLOW PEOPLE TO PLAY VIDEO POKER, BLACKJACK AND KENO FOR 25 CENTS TO $2.00 PER GAME AND WIN UP TO $1,000 PER GAME. ONLY THE RACETRACKS AND BUSINESSES WHICH MEET CURRENT ALCOHOL PERMIT REQUIREMENTS, SUCH AS CLUBS, COULD HAVE THE GAME MACHINES, AND THE NUMBER OF MACHINES IN EACH PLACE WOULD BE LIMITED. NO MINORS COULD PLAY. ADVERTISING WOULD BE LIMITED. THE ARKANSAS LOTTERY COMMISSION AND A NEWLY CREATED ARKANSAS STATE POLICE LOTTERY DIVISION WOULD LICENSE AND MONITOR THE OPERATIONS OF THE VIDEO TERMINALS. THE ARKANSAS STATE POLICE LOTTERY DIVISION WOULD ALSO ENFORCE THE LOTTERY LAWS. ARKANSAS BUSINESSES COULD MANUFACTURE AND DISTRIBUTE THE VIDEO MACHINES. THE MONEY FROM THE VIDEO LOTTERY WOULD BE DIVIDED AS FOLLOWS: AVERAGE OF 88% TO PLAYERS; 3 TO 4.2% TO STATE LOCAL CAUSES, TO BE GIVEN TO CITY COUNTY POLICE/SHERIFFS, STATE EDUCATION, STATE PARKS AND TOURISM AND LOCAL CHARITIES; 3.96 TO 4.74% TO STATE LOTTERY SYSTEM, INC. TO PURCHASE, INSTALL, SERVICE, MAINTAIN VIDEO MACHINES AS OPERATOR; 3.75 TO 4.26% TO BUSINESSES IN WHICH THE VIDEO MACHINES ARE LOCATED.
 A PRIVATE COMPANY, STATE LOTTERY SYSTEM, INC., WOULD PROVIDE UP TO $60 MILLION IN FINANCING TO GET THE LOTTERY SYSTEM STARTED. PART OF THE $60 MILLION WOULD BE FURNISHED TO THE STATE FOR START-UP COSTS AND THE STATE WOULD REPAY THAT PART WITH LOTTERY MONIES. THE BULK OF THE $60 MILLION WOULD BE USED BY STATE LOTTERY SYSTEM, INC. TO PURCHASE AND INSTALL LOTTERY VIDEO TERMINAL MACHINES. IN EXCHANGE, STATE LOTTERY SYSTEM, INC. WOULD BE GRANTED A CONTRACT SO THAT IT WOULD BE THE ONLY COMPANY IN ARKANSAS WHICH COULD OWN, INSTALL, SERVICE AND MAINTAIN THE VIDEO LOTTERY MACHINES. AFTER THE FIRST FOUR START-UP YEARS ARKANSAS CITIZENS COULD BUY AND OWN MAJORITY STOCK IN STATE LOTTERY SYSTEM, INC. JUST AS STOCK IS OWNED IN WAL-MART AND OTHER PRIVATE COMPANIES. IN THE EVENT STATE LOTTERY SYSTEM, INC. FAILS TO PROVIDE REQUIRED FINANCING THE ARKANSAS LOTTERY COMMISSION COULD FIND A SUBSTITUTE METHOD FOR START-UP AND FOR PURCHASING AND INSTALLING THE VIDEO LOTTERY MACHINES.
 NON-PROFIT BINGO AND RAFFLE GAMES COULD BE HELD BY NON-PROFIT, TAX-EXEMPT ORGANIZATIONS SUCH AS CHURCHES, CIVIC GROUPS AND VETERAN'S GROUPS TO ALLOW THOSE ORGANIZATIONS TO RAISE FUNDS.
 NO TAX DOLLARS WILL BE USED TO ESTABLISH OR RUN THE LOTTERY GAME ACTIVITIES. THE ARKANSAS LOTTERY COMMISSION AND ARKANSAS STATE POLICE LOTTERY DIVISION WOULD BE RUN WITH FUNDS FROM THE LOTTERY ACTIVITIES. NO STATE OR LOCAL INCOME OR SALES TAXES COULD BE PLACED UPON THE LOTTERY ACTIVITIES.
The Attorney General is required pursuant to Section 7-9-107 to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, the entire petition may be rejected.
Section 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment or likelihood that it will accomplish its stated objective. Consequently, this review has been limited to determining whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed initiative.
The purpose of my review and certification is to insure that the popular name and ballot title honestly, intelligently, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucus v. Riviere, 283 Ark. 463,466, 677 S.W.2d 846 (1984). The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734,233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions which might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294,532 S.W.2d 741 (1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207
(1958). The popular name is to be considered together with the ballot title in determining its sufficiency. Id.
A ballot title must include an impartial summary of the proposed amendment which will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416,417, 316 S.W.2d 185 (1958); Becker v. Riviere, 270 Ark. 219,223, 226, 604 S.W.2d 555 (1980). It has been stated that the ballot title must contain any information that would "give the elector `serious ground for reflection.'" Finn v. McCuen,303 Ark. 418, 798 S.W.2d 34 (1990), citing Gaines v. McCuen,296 Ark. 513, 758 S.W.2d 403 (1988). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Applying these precepts, it is my opinion that a more suitable popular name should be substituted for the one proposed. The submitted popular name is therefore rejected, and the following substituted in its place:
(Popular Name)
 AN AMENDMENT TO AUTHORIZE A STATE LOTTERY, VIDEO TERMINAL GAMING, AND NON-PROFIT BINGO GAMES AND RAFFLES
In addition, in my opinion a more complete ballot title should be substituted for the one proposed, in order to give the voter a better understanding of the issues presented. The proposed ballot title is therefore rejected, and the following substituted therefor:
(Ballot Title)
 AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING A STATE LOTTERY, VIDEO TERMINAL GAMING, AND NON-PROFIT BINGO GAMES AND RAFFLES; CREATING A NINE-MEMBER ARKANSAS LOTTERY COMMISSION TO BE APPOINTED BY THE GOVERNOR, WITH THE ADVICE AND CONSENT OF THE SENATE, TO ESTABLISH AND CONDUCT THE STATE LOTTERY AND TO REGULATE THE VIDEO TERMINAL GAMES, BINGO GAMES AND RAFFLES AUTHORIZED BY THE AMENDMENT; PROVIDING THAT THE COMMISSION SHALL APPOINT A DIRECTOR TO DIRECT THE OPERATIONS OF THE STATE LOTTERY; AUTHORIZING THE COMMISSION TO SPECIFY WHAT STATE LOTTERY TICKET GAMES MAY BE CONDUCTED AND TO REGULATE THE SELECTION OF RETAIL ORGANIZATIONS AUTHORIZED TO SELL LOTTERY TICKETS; PROHIBITING LOTTERY TICKET SALES TO ANYONE UNDER 21 YEARS OF AGE, OR ON CREDIT, OR THROUGH ANY PURCHASER OPERATED SYSTEM; PROVIDING THAT THE REVENUES FROM THE STATE LOTTERY WILL BE ALLOCATED AS FOLLOWS: AVERAGE OF 50% TO PRIZES FOR PLAYERS; 32% TO STATE AND LOCAL FUNDS (50% OF WHICH WILL GO TO LOCAL POLICE AND SHERIFF'S DEPARTMENTS IN DIRECT PROPORTION TO THE GROSS REVENUE GENERATED BY LOTTERY VIDEO TERMINALS IN THE LOCALITY, 20% EACH TO STATE GENERAL EDUCATION FUND AND STATE PARKS, AND 10% TO LOCAL CHARITIES); 10% TO THE ARKANSAS LOTTERY COMMISSION BUDGET; AND 8% TO ARKANSAS LOTTERY RETAILERS IN PROPORTION TO THE RETAILER'S SALE OF LOTTERY TICKETS; PROVIDING THAT THE GAMES OF POKER, BLACKJACK AND KENO ARE INITIALLY AUTHORIZED TO BE PLAYED ON THE VIDEO TERMINALS AUTHORIZED BY THE AMENDMENT; PROVIDING THAT VIDEO TERMINAL GAMING MEANS AN ELECTRONIC VIDEO GAME THAT, UPON INSERTION OF COINS, PROVIDES CREDITS TO PLAY OR SIMULATE THE PLAY OF AUTHORIZED GAMES AND THAT ISSUES A PAY SLIP TO A WINNING PLAYER THAT MAY BE REDEEMED FOR CASH; RESTRICTING THE PLACEMENT OF SUCH VIDEO TERMINALS TO PARI-MUTUEL FRANCHISEES AUTHORIZED TO CONDUCT HORSE OR GREYHOUND RACING AND TO CERTAIN PREMISES WHICH MEET CURRENT PERMIT REQUIREMENTS UNDER THE ARKANSAS ALCOHOLIC BEVERAGE CONTROL RULES AND REGULATIONS; LIMITING THE NUMBER OF VIDEO TERMINALS THAT MAY BE LOCATED AT THE AUTHORIZED LOCATIONS, EXCEPT FOR THE PARI-MUTUEL LOCATIONS, AT WHICH THERE MAY BE AN UNLIMITED NUMBER; PROVIDING THAT THE ARKANSAS LOTTERY COMMISSION AND A NEWLY CREATED ARKANSAS STATE POLICE LOTTERY DIVISION WILL ADMINISTER THE LICENSING PROGRAM CONNECTED WITH VIDEO GAMING TERMINALS; PROVIDING THAT THE ARKANSAS STATE POLICE LOTTERY DIVISION WILL MONITOR VIDEO GAMING TERMINALS ACCORDING TO GUIDELINES ESTABLISHED BY THE ARKANSAS LOTTERY COMMISSION; PROVIDING THAT STATE LOTTERY SYSTEM, INC., A PRIVATE ARKANSAS CORPORATION, SHALL SERVE AS THE SOLE AND EXCLUSIVE OPERATOR FOR ALL VIDEO GAMING TERMINALS IN THE STATE AND AS SUCH SHALL OWN, PLACE, INSTALL, SERVICE AND MAINTAIN THE VIDEO TERMINALS; PROVIDING THAT STATE LOTTERY SYSTEM, INC., WILL SUPPLY THE START-UP FINANCING, IN NO EVENT TO EXCEED $60 MILLION DOLLARS, FOR THE ARKANSAS LOTTERY COMMISSION, STATE LOTTERY, ARKANSAS STATE POLICE LOTTERY DIVISION, AND VIDEO GAMING TERMINALS, SUBJECT TO STATE LOTTERY SYSTEM BEING REPAID BY THE STATE WITHIN FIVE (5) YEARS FROM THE DATE OF FINANCING WITH LOTTERY GROSS REVENUES AND LICENSING FEES SUBSEQUENTLY GENERATED BY THE STATE; REQUIRING STATE LOTTERY SYSTEM, INC., WITHIN SIX MONTHS AFTER THE CONCLUSION OF THE START-UP PERIOD TO MAKE A PUBLIC OFFERING OF ITS STOCK TO CITIZENS OF THE STATE; PROVIDING THAT IF STATE LOTTERY SYSTEM, INC. FAILS TO PROVIDE THE START-UP FINANCING, THE ARKANSAS LOTTERY COMMISSION SHALL DETERMINE A SUBSTITUTE METHOD FOR IMPLEMENTING THE PROVISIONS OF THIS AMENDMENT; PROVIDING THAT ONE HUNDRED PERCENT (100%) OF THE VIDEO TERMINAL LICENSING FEES SHALL BE ALLOCATED TO THE BUDGET OF THE ARKANSAS STATE POLICE LOTTERY DIVISION; PROVIDING THAT THE VIDEO TERMINAL GROSS REVENUES SHALL BE ALLOCATED AS FOLLOWS: AVERAGE OF 88% TO PLAYERS; 3% THE FIRST YEAR, 3.6% THE SECOND YEAR, AND 4.2% THE THIRD AND SUBSEQUENT YEARS TO LOCAL POLICE AND SHERIFFS, STATE GENERAL EDUCATION, STATE PARKS, AND LOCAL CHARITIES; 4.74% THE FIRST YEAR, 4.65% THE SECOND YEAR, AND 3.96% THE THIRD AND SUBSEQUENT YEARS TO STATE LOTTERY SYSTEM, INC.; AND 4.26% THE FIRST YEAR, 3.75% THE SECOND YEAR, AND 3.84% THE THIRD AND SUBSEQUENT YEARS TO THOSE ESTABLISHMENTS LICENSED AND AUTHORIZED TO PLACE VIDEO GAMING TERMINALS ON THEIR PREMISES; PROVIDING THAT BINGO GAMES AND RAFFLES MAY BE CONDUCTED BY ANY NON-PROFIT, TAX-EXEMPT RELIGIOUS, EDUCATIONAL, VETERANS', FRATERNAL, SERVICE, CIVIC, MEDICAL, OR VOLUNTEER RESCUE, FIREFIGHTER'S, OR POLICE ORGANIZATION WHICH HAS BEEN IN EXISTENCE IN THIS STATE FOR NOT LESS THAN FIVE (5) YEARS AND WHICH HAS BEEN ISSUED A CURRENT LICENSE TO CONDUCT THE GAMES; RESTRICTING THE HOURS AND NUMBER OF DAYS PER WEEK THAT BINGO GAMES AUTHORIZED BY THIS AMENDMENT MAY BE CONDUCTED; RESTRICTING THE NUMBER OF TIMES PER YEAR RAFFLES AUTHORIZED BY THIS AMENDMENT MAY BE CONDUCTED; REQUIRING ALL NET RECEIPTS EXCEEDING THE ACTUAL COST OF CONDUCTING A BINGO GAME OR RAFFLE TO BE USED ONLY FOR CHARITABLE, RELIGIOUS OR PHILANTHROPIC PURPOSES; PROHIBITING THE IMPOSITION OF ANY STATE OR LOCAL INCOME AND SALES TAX UPON ANY PRIZE WINNINGS FROM GAMES AUTHORIZED BY THE AMENDMENT; PROHIBITING ANY STATE OR LOCAL TAX OF ANY KIND UPON THE FEES OR REVENUES GENERATED PURSUANT TO THIS AMENDMENT OR UPON ANY ASPECT OF THE LOTTERY GAMES AUTHORIZED BY THE AMENDMENT; PROVIDING THAT HORSE RACING AND GREYHOUND RACING CONDUCTED BY PARI-MUTUEL FRANCHISEES IN GARLAND AND CRITTENDEN COUNTIES, RESPECTIVELY, AND PARI-MUTUEL WAGERING THEREON ARE LAWFUL; PROHIBITING ALL WAGERING ACTIVITIES OTHER THAN THOSE AUTHORIZED BY THE AMENDMENT; MAKING THE AMENDMENT EFFECTIVE UPON PASSAGE, RENDERING ITS PROVISIONS SEVERABLE, AND REPEALING ALL EXISTING LAWS AND CONSTITUTIONAL PROVISIONS TO THE EXTENT THEY CONFLICT WITH THIS AMENDMENT; PROVIDING THAT THIS AMENDMENT IS SELF-EXECUTING; AND FOR OTHER PURPOSES.
Pursuant to A.C.A. 7-9-108(c), instructions to canvassers and signers are enclosed herewith.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Nancy A. Hall.
Sincerely, WINSTON BRYANT Attorney General
WB:cyh
Enclosure
[1] A copy of the popular name and ballot title were submitted with the initial request which was made on May 23, 1994. On June 2, 1994, a revised copy of one of the pages of the text of the amendment was submitted to this office. The only change indicated by the June 2 submission appears on line 95 of the amendment, which, as revised, defines "minor" to mean "every natural person under the age of 21 years." Originally, line 95 defined "minor" as "every natural person under the age of 18 years."