Mr. Mike Wilson The Committee to Promote Arkansas Post Office Box 250572 Little Rock, Arkansas 72225
Dear Mr. Wilson:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of the following popular name and ballot title for a proposed constitutional amendment:
 (Popular Name) AN AMENDMENT TO ESTABLISH A STATEWIDE STATE-RUN LOTTERY, TO PERMIT THE GAME OF BINGO AND RAFFLES TO BE CONDUCTED BY CHARITABLE, NON-PROFIT ORGANIZATIONS, TO AUTHORIZE CASINO GAMING AT TWO SITES IN GARLAND COUNTY AND AT TWO SITES IN CRITTENDEN COUNTY, TO PERMIT THE GENERAL ASSEMBLY TO AUTHORIZE CASINO GAMING AT UP TO FOUR ADDITIONAL SITES; TO ESTABLISH THE ARKANSAS EDUCATION TRUST FUND AND THE ARKANSAS CASINO GAMING COMMISSION.
 (Ballot Title) AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO ESTABLISH A STATEWIDE STATE-RUN LOTTERY TO BE REGULATED BY THE GENERAL ASSEMBLY; TO PERMIT BINGO AND RAFFLES TO BE CONDUCTED BY CHARITABLE, NON-PROFIT ORGANIZATIONS FOR CHARITABLE PURPOSES TO BE REGULATED BY THE GENERAL ASSEMBLY; TO AUTHORIZE CASINO GAMING IN GARLAND COUNTY AT TWO SITES, ONE SPECIFICALLY DESCRIBED IN THE AMENDMENT AND ONE TO BE CHOSEN BY THE QUORUM COURT OF GARLAND COUNTY, TO AUTHORIZE CASINO GAMING IN CRITTENDEN COUNTY AT TWO SITES BOTH OF WHICH ARE SPECIFICALLY DESCRIBED IN THE AMENDMENT, TO AUTHORIZE THE GENERAL ASSEMBLY TO PERMIT CASINO GAMING AT UP TO FOUR ADDITIONAL SITES TO BE FIRST APPROVED AT A COUNTYWIDE LOCAL OPTION ELECTION CALLED BY THE QUORUM COURT OF THE COUNTY IN WHICH THE PROPOSED CASINO OR CASINOS ARE TO BE LOCATED; DEFINING CASINO GAMING TO INCLUDE ANY GAME PLAYED WITH CARDS, DICE, OR EQUIPMENT FOR MONEY; ESTABLISHING THE ARKANSAS EDUCATION TRUST FUND; REQUIRING THE TRUST FUNDS BE USED TO PROVIDE QUALIFIED ARKANSAS HIGH SCHOOL GRADUATES GRANTS FOR POST-SECONDARY EDUCATION; REQUIRING THAT ANY REMAINING TRUST FUNDS BUT NO LESS THAN 25% OF THE TRUST FUNDS BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TO EXPAND AND ESTABLISH TUTORIAL PROGRAMS FOR HIGH SCHOOL STUDENTS; PROVIDING THAT AT LEAST 35% OF THE LOTTERY REVENUES BE PAID TO THE ARKANSAS EDUCATION TRUST FUND, AT LEAST 50% BE RETURNED TO THE PUBLIC AS PRIZES AND NO MORE THAN 15% BE USED TO PAY LOTTERY EXPENSES; ALLOWING THE GENERAL ASSEMBLY BY THREE-FOURTHS VOTE TO CHANGE THE ALLOCATION OF LOTTERY REVENUES; IMPOSING TAXES OF 10% ON THE CASINO'S NET GAMING REVENUES TO BE PAID TO THE ARKANSAS EDUCATION TRUST FUND, 4% OF THE CASINO'S NET GAMING REVENUES TO BE PAID TO THE COUNTY UNLESS THE CASINO IS LOCATED WITHIN A MUNICIPALITY THEN 2% TO THE COUNTY AND 2% TO THE MUNICIPALITY, AND 1% OF THE CASINO'S NET GAMING REVENUES TO BE PAID TO THE STATE'S GENERAL TREASURY; PROVIDING THAT NO OTHER TAX SHALL BE IMPOSED ON THE CASINOS GROSS OR NET GAMING REVENUES; ALLOWING THE GENERAL ASSEMBLY BY THREE-FOURTHS VOTE TO CHANGE THE TAX RATE OR DISTRIBUTION; ESTABLISHING A FIVE MEMBER CASINO GAMING COMMISSION TO CONTROL, MANAGE, REGULATE AND LICENSE CASINO GAMING AND TO ADMINISTER THE LAWS PERTAINING THERETO; PROVIDING THAT THE COMMISSION MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH ADVICE AND CONSENT OF THE STATE SENATE AND MAY ONLY BE REMOVED BY THE GOVERNOR FOR CAUSE WITH CONCURRENCE OF THE GENERAL ASSEMBLY; PROVIDING FOR JUDICIAL REVIEW OF COMMISSION'S DECISIONS OR ACTIONS; PROVIDING THAT CASINO GAMING ONLY BE CONDUCTED BY A LICENSED OWNER OR MANAGER WHO MUST ESTABLISH FINANCIAL STABILITY, INTEGRITY AND RESPONSIBILITY; PROVIDING AS A CONDITION TO GRANTING A CASINO GAMING LICENSE THAT THE OWNER SPEND A MINIMUM OF $25,000,000 TO CONSTRUCT NON-CASINO GAMING AREA FACILITIES WHICH ARE DESIGNED TO ATTRACT TOURISTS; NO MORE THAN TWO CASINOS BE LOCATED IN ANY ONE COUNTY; NO PERSON OR ENTITY MAY OWN AN INTEREST IN OR OPERATE MORE THAN ONE CASINO; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; GIVING THE ALCOHOLIC BEVERAGE AND CONTROL BOARD EXCLUSIVE CONTROL OVER THE LICENSING FOR USE OF ALCOHOLIC BEVERAGES IN CASINOS BUT ALLOWING THE CASINO TO SELL OR PROVIDE COMPLIMENTARY ALCOHOLIC BEVERAGES DURING ALL HOURS IT OPERATES; DECLARING THE PROVISIONS OF THE AMENDMENT TO BE SEVERABLE AND INCONSISTENT PROVISIONS INAPPLICABLE; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION AT THE NEXT REGULAR SESSION TO BEGIN THE LOTTERY, CHARITABLE BINGO AND RAFFLES; AND THAT THE AMENDMENT SHALL BECOME EFFECTIVE UPON PASSAGE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, the entire petition may be rejected.
The statute neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment or likelihood that it will accomplish its stated objective. Consequently, this review has been limited to determining whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to insure that the popular name and ballot title honestly, intelligently, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984). The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734,233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions which might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaneyv. Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining its sufficiency. Id.
A ballot title must include an impartial summary of the proposed amendment which will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994),citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990), Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988), Hoban v. Hall, supra, andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)), else voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee, v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Applying the above precepts, your proposed popular name and ballot title are hereby approved as submitted.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers are enclosed herewith.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh