Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request, pursuant to A.C.A. § 7-9-107 (Repl. 1993), for certification of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME GAMES OF CHANCE AND SKILL AND OFF TRACK PARI-MUTUEL WAGERING AS A LOCAL BALLOT OPTION
 BALLOT TITLE AMENDMENT TO PROVIDE ANYONE OR GROUP THE RIGHT TO INITIATE AND PETITION THE LEGAL VOTERS OF A COUNTY AND CITIES OF THE FIRST CLASS AND SECOND CLASS WITHIN THE PROVISIONS OF AMENDMENT 7 OF THE CONSTITUTION OF THE STATE OF ARKANSAS TO ACCEPT OR REJECT BY THE LEGAL VOTERS AS A WHOLELY [SIC] SEPARATE LOCAL BALLOT OPTION THE OPERATION OF PAY TO PLAY BINGO, RAFFLES, LOTTERIES AND GAMES OF SKILL OPERATED BY NON PROFIT ORGANIZATIONS AS AN INITIATED ACT ON THE REGULAR GENERAL ELECTION BALLOT; TO PROVIDE AS A WHOLELY [SIC] SEPARATE LOCAL BALLOT OPTION THE FOR PROFIT BUSINESS OPERATION OF PAY TO PLAY GAMES OF CHANCE, SKILL AND OFF TRACK PARI-MUTUEL WAGERING IN HOTELS, MOTELS, MOTOR LODGES, INNS AND OTHER SIMILAR BUSINESS WITH NO LESS THAN TEN THOUSAND SQUARE FEET OF ENCLOSED FLOOR SPACE OF WHICH NO MORE THAN TEN PERCENT OF THE OVER ALL ENCLOSED FLOOR SPACE SHALL BE USED FOR PAY TO PLAY GAMES OF CHANCE AND SKILL BUT SHALL EXCLUDE PAY TO PLAY BINGO AND RAFFLES FROM THE FOR PROFIT BUSINESS OPERATION IN HOTELS, MOTELS, INNS AND OTHER SIMILAR BUSINESSES AS AN INITIATED ACT ON THE REGULAR GENERAL ELECTION BALLOT; TO PROVIDE AS A WHOLELY [SIC] SEPARATE LOCAL BALLOT OPTION THE FOR PROFIT BUSINESS OPERATION OF PAY TO PLAY GAMES OF CHANCE, SKILL AND OFF TRACK PARI-MUTUEL WAGERING ON WATER VESSELS NO LESS THAN ONE HUNDRED FEET IN LENGTH ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BUT SHALL EXCLUDE PAY TO PLAY BINGO AND RAFFLES FROM THE FOR PROFIT OPERATION ON WATER VESSELS AS AN INITIATED ACT ON THE REGULAR GENERAL ELECTION BALLOT; TO PROVIDE AS A WHOLELY [SIC] SEPARATE LOCAL BALLOT OPTION THE FOR PROFIT BUSINESS OPERATION OF OFF TRACK PARI-MUTUEL WAGERING AS A WHOLELY [SIC] SEPARATE BUSINESS AND AS A PART OF A FOR PROFIT BUSINESS OPERATION OF PAY TO PLAY GAMES OF CHANCE AND SKILL IN HOTELS AND ON A WATER VESSEL AS AN INITIATED ACT ON THE REGULAR GENERAL ELECTION BALLOT; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so; or if the proposed popular name and ballot title are sufficiently misleading, he may reject the entire petition.
Section 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to several ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
The following ambiguities must be clarified before I can perform my statutory duty:
 1. Section One (1), subsection 1, authorizes an initiative petition for the operation of, among other things," games of skill" by nonprofit organizations. Subsections 2 and 3 (regarding for-profit operations in hotels and on water vessels), on the other hand, authorize "games of chance and skill." "Games of chance" are defined in Section (4), subsection 1 (c) as "any gaming table or gambling device . . . for the purpose of playing any game of chance, or at which any money or property may be won or lost." The term "skill" is defined in Section Four (4), subsection 1 (d) as" the ability to use one's knowledge effectively in doing something, and a developed or acquired ability."
 When so defined, "games of skill" could, it would seem, include what is commonly understood as gambling. It is unclear, however, whether this is actually the intent under subsection 1 of Section (1). I cannot determine the effect of including "games of chance" in subsections 2 and 3 of Section (1), while only authorizing "games of skill" in subsection 1. This ambiguity should be clarified for proper summarization of these provisions in the ballot title.
 2. Subsection 2 of Section (1) states, with regard to the for-profit operation of "games of chance, skill and off track pari-mutuel wagering" in hotels, etc., that "no more than ten (10%) percent of the over all enclosed floor space shall be used as an area with pay to play games of chance and skill. . . ." Thus, as I interpret this provision, there is no limit on the amount of floor space that may be used as an area for off track pari mutuel wagering. This distinction, if in fact intended, should probably be reflected in the ballot title.
 3. Subsection 3 of Section (1), dealing with operations on water vessels, does not include "off track pari-mutuel wagering," although it is included elsewhere in subsections 7 and 9 of Section (1), and in subsection 3 of Section (2) (ballot titles). Clarification of this ambiguity would remove any questions in this regard.
 4. An ambiguity arises, in my judgment, under Subsections 5 through 9 of Section (1) with regard to the effect of a favorable local option vote in the county under your proposal. It is unclear whether, notwithstanding a favorable vote in a county election, there must also be a favorable vote in each first and second class city in order to authorize the various operations. Subsection 5 states that the provisions authorizing the various operations "shall be effective only in cities of the first class and cities of the second class and counties in which the aforementioned [operations] are not prohibited . . . and in which the operation of pay to play games of chance and skill has been approved by a majority vote on the regular general election ballot." The language of subsections 6 through 9 suggests, however, that while the result of a vote held in a city will be determinative and will stand separate from a county vote, a favorable vote in the county will include the cities as long as there is no conflicting city vote. These provisions cannot be reconciled, and in my view this is an essential fact for the voters' consideration. This matter should be clearly stated so that it can be properly summarized in the ballot title.
 5. Section 3 of your proposed measure (entitled "Regulations") authorizes counties, cities and towns to pass ordinances and impose various restrictions and requirements" as will promote public health, and safety. . . ." It is difficult to determine the precise effect of this provision as it does not indicate how this regulatory authority of the counties and cities interrelates. It is unclear, for instance, what happens in the event a county ordinance conflicts with an ordinance of a city within the county. I cannot determine the effect of your measure on this point, and I believe this is a matter that may give a voter serious ground for reflection. As such, it should be clearly stated.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General