Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted several similar measures, each of which I rejected due to ambiguities in the text of your proposed amendments. See, e.g., Ops. Att'y Gen. Nos. 2000-241, -240, -214, -193, -192, -186, -163, -152, -138, -135, and -120.
You have made changes to your measure and submitted a revised popular name and ballot title for my certification.
I am rejecting your proposed popular name and ballot title. Please readthis letter carefully. It contains important information about why I amrejecting your proposed popular name and ballot title.
Your proposed popular name and ballot title are stated as follows:
 POPULAR NAME PAYMENT OF CANVASSERS AND SPONSORS BEFORE EXEMPTING STATE AND LOCAL GROSS RECEIPT TAX FROM CERTAIN FOOD ITEMS
 BALLOT TITLE PROVIDING FOR THE SEPARATE RECEIPT AND ACCOUNTING, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL WITH EXCEPTION OF EXCLUSION AS NOTED HEREIN; PROVIDING FOR THE DEPOSIT OF FUNDS IN THE CANVASSER'S ACCOUNT, BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION, OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS AS DEFINED HEREIN FOR THE FIRST 180 DAYS AFTER PASSAGE OF THIS AMENDMENT AND REQUIRING THE IMMEDIATE DEPOSIT OF SUCH MONEYS IN THE CANVASSER'S ACCOUNT FOR SAID TIME; CREATING THE CANVASSER'S ACCOUNT SEPARATE AND APART FROM THE STATE TREASURY TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE; AMENDING A.C.A. § 19-4-803 TO EXEMPT THE "CANVASSER'S ACCOUNT" FROM THE REQUIREMENTS OF AN APPROPRIATION; EMPOWERING THE STATE BOARD OF FINANCE TO DISTRIBUTE THE CANVASSER'S ACCOUNT MONEY TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO MANAGE AND INVEST THE CANVASSER'S ACCOUNT IN COMPLIANCE WITH THE PRUDENT INVESTOR RULE AND OTHER APPLICABLE STANDARDS IN A.C.A. §§ 24-3-408, -414, -415, -417 TO -425 AND A.C.A. § 19-3-518; EMPOWERING THE STATE BOARD OF FINANCE TO HIRE PROFESSIONALS TO ASSIST IN THE INVESTMENT OF THE CANVASSER'S ACCOUNT, AND AUTHORIZING THE BOARD TO USE INVESTMENT EARNINGS FROM THOSE FUNDS TO COMPENSATE SUCH PROFESSIONALS; AUTHORIZING 40% OF THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT TO BE DIVIDED EQUALLY BE THE NUMBER OF REGISTERED VOTER SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE THIS AMENDMENT ON THE GENERAL ELECTION BALLOT WITH EACH CANVASSER RECEIVING AN EQUAL PART FROM THE ACCOUNT FOR EACH REGISTERED VOTER'S SIGNATURE ACCEPTED AS VALID BY THE SECRETARY OF STATE; REQUIRING THE STATE BOARD OF FINANCE TO PAY 10% OF THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT TO THE SPONSOR OF THIS AMENDMENT; REQUIRING THE STATE BOARD OF FINANCE OT MAKE SUCH AMOUNTS PAYABLE TO THE CANVASSERS AND SPONSOR OF THIS AMENDMENT NOT MORE THAN 30 WORKING DAYS AFTER THE FINAL DEPOSIT OF THE PRINCIPAL AMOUNT IN THE CANVASSER'S ACCOUNT; PROVIDING 50% OF THE PRINCIPAL AMOUNT OF THE CANVASSER'S PAYMENT ACCOUNT BE RETAINED IN THE CANVASSER'S ACCOUNT; PROVIDING ALL INVESTMENT EARNINGS ON THE PRINCIPAL AMOUNT OF THE CANVASSER'S ACCOUNT BE RETAINED IN THE ACCOUNT; PROVIDING NO PAYMENT SHALL BE MADE BY THE STATE BOARD OF FINANCE TO ANY PERSON FOR THEIR SIGNATURE ON ANY PETITION AS A PETITIONER WITH THEIR SIGNATURE AS A CANVASSER; AUTHORIZING 40% OF THE PREVIOUS 24 MONTHS OF INVESTMENT EARNINGS PRIOR TO THE DATE OF PASSAGE BY THE VOTERS TO BE EQUALLY DIVIDED BY THE TOTAL NUMBER OF REGISTERED VOTER'S SIGNATURES COUNTED AS VALID BY THE SECRETARY OF STATE TO PLACE ALL THOSE STATE WIDE AMENDMENTS OR ACTS ON THE GENERAL ELECTION BALLOT APPROVED BY THE VOTERS WITH EACH CANVASSER RECEIVING AN EQUAL PART FROM THE CANVASSER'S ACCOUNT FOR EACH REGISTERED VOTER'S SIGNATURE THEY HAVE ACCEPTED AS VALID BY THE SECRETARY OF STATE; AUTHORIZING 10% OF THE PREVIOUS 24 MONTHS OF INVESTMENT EARNINGS FROM THE DATE OF PASSAGE BY THE VOTERS FROM THE CANVASSER'S ACCOUNT TO BE DIVIDED EQUALLY BY THE NUMBER OF STATE WIDE AMENDMENTS OF ACTS APPROVED BY THE VOTERS AND PAID TO THE SPONSORS OF THOSE AMENDMENTS OR ACTS APPROVED BY THE VOTERS; REQUIRING THE STATE BOARD OF FINANCE TO PAY THE CANVASSERS AND SPONSORS FROM THE CANVASSER'S ACCOUNT NOT MORE THAN 30 DAYS AFTER PASSAGE OF ANY STATE WIDE AMENDMENT OR ACT WITH EXCEPTION OF EXCLUSION TO THOSE CANVASSERS AND THE SPONSOR OF THIS AMENDMENT; REQUIRING REDEPOSIT OF INVESTMENT EARNINGS IN THE CANVASSER'S ACCOUNT NOT USED FOR THE PURPOSES HEREIN STATED; PROVIDING ANY PAYMENT FROM THE CANVASSER'S ACCOUNT BY THE STATE BOARD OF FINANCE TO ANY CANVASSER AND THE SPONSOR OF THIS AMENDMENT AND THE CANVASSERS AND SPONSORS OF ANY OTHER STATE WIDE AMENDMENT OR ACT APPROVED BY THE VOTERS TO BE EXEMPT FROM ANY STATE TAX; ON THE 181ST
DAY AFTER PASSAGE OF THIS AMENDMENT FOOD AS DEFINED HEREIN WITH EXCEPTION OF THOSE EXCLUSIONS SHALL BE EXEMPT FROM THE STATE AND LOCAL RECEIPT SALES TAX; PROVIDING THIS AMENDMENT SHALL NOT AFFECT THE STATE AND LOCAL GROSS RECEIPT SALES TAX UNDER A.C.A. § 26-57-901 OF THE "ARKANSAS SOFT DRINK TAX ACT" AND TO PROVIDE ANY ITEMS HEREAFTER EXCLUDED FROM THE "ARKANSAS SOFT DRINK TAX ACT" TO BE INCLUDED AS A PART OF THIS AMENDMENT AS A FOOD ITEM; PROVIDING THIS AMENDMENT SHALL NOT AFFECT ANY TAX ON PREPARED RESTAURANT FOODS DEFINED AS A RESTAURANT OR SIMILAR BUSINESS UNDER A.C.A. § 20-57-208; PROVIDING THIS AMENDMENT SHALL NOT AFFECT ANY TAX ON ALCOHOLIC BEVERAGES; PROVIDING THIS AMENDMENT SHALL BE SELF EXECUTING; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title for a variety of reasons.
(1) One reason that I must reject your proposed popular name and ballot title is that the text of your proposed measure contains certain ambiguities that render it incapable of being fairly and accurately summarized. I refer to the following ambiguities:
 (a) Section One of your proposed measure provides for the deposit of certain tax funds into a "Canvasser's Account" "for the first one hundred and eighty (180) days". This section does not state explicitly when the 180 days are to begin running.
 (b) Sections Three (6)(a) and Three (6)(e) are unclear as to whether the funds described therein are to be divided equally by the number of signatures or divided equally by the number of canvassers. A similar ambiguity is reflected in Sections Three (6)(f) and (g).
 (c) Section Three (6)(d) states that the State Board of Finance is "authorized" to distribute certain funds "not more than thirty (30) working days after the final principal amount of deposit." It is unclear from this language whether the Board is also required to distribute the funds within this time frame. A similar problem appears in Section Three (6)(h).
 (d) Section Three (6)(e) authorizes the distribution of a percentage of "the previous twenty four (24) months of investment earning prior to the date of voter approval," but does not indicate the date previous to which the 24 months are to be counted. A similar problem appears in Section Seven (4)(a),(b), and (c).
 (e) Section 10 provides for an annual audit of the scholarship fund for the purpose of determining when the fund has exceeded "50% of the annual amount of the state and local gross receipt sales tax on food items received by the State Board of Finance[.]" This Section also requires that the State Board of Finance "immediately" notify the Department of Finance and Administration when the fund has exceeded this amount. Because the audit is conducted annually, it is difficult to perceive how the Board can "immediately" notify DFA, since the audit may be conducted many months after the fund has exceeded the stated amount. Moreover, this Section does not state the date on which the audit is to be conducted, or the date on which the designated tax receipts are to be calculated for purposes of comparison with the scholarship fund amount.
 (f) Section Eleven (2) refers to "items hereafter excluded from the `Arkansas Soft Drink Tax Act.'" The use of the term "hereafter" renders it impossible to determine exactly which items fall within this provision. More specifically, it is unclear whether the term "hereafter" means "hereafter in time" or "hereafter in the provisions of this measure." If the term means "hereafter in time," a further question is raised concerning items that are currently excluded from the Arkansas Soft Drink Tax Act.
(2) I must also reject your proposed popular name and ballot title on the grounds of its length and complexity. I note that your proposed measure attempts to encompass a number of unrelated subjects. Although the law does not prohibit you from including multiple subjects in one measure, an attempt to do so may render the measure inordinately complex and lengthy. When a proposed measure is inordinately complex and lengthy, it cannot as a practical matter be summarized in a ballot title that fairly and accurately informs the voters of the contents of the measure. In this regard, I must point out that your proposed ballot title contains 804 words. Because the voters have a limited amount of time to spend in the voting booth, they cannot practically be expected to read and comprehend a ballot title of this length, if the ballot title has other complicating features, such as an attempt to encompass multiple unrelated subjects.
(3) Finally, I must reject your proposed popular name and ballot title because the text of the measure contains numerous spelling, punctuation, grammatical, and syntax errors that render the measure ambiguous and difficult to understand sufficiently to summarize in a popular name and ballot title without my having to surmise your intended meaning.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c).
Mr. Emigh, the problems discussed above that have led me to reject yourproposed popular name and ballot title in this instance are problems thathave recurred in the numerous measures that you have previously presentedto my office for certification. Amending the constitution of the state isa very serious matter. The Arkansas Supreme Court holds popular names andballot titles of proposed constitutional amendments to a standard that iscommensurate with this seriousness. Accordingly, I must be diligent in myduty to assure that the popular names and ballot titles that I certifymeet the court's high standard. If you are intent upon passing a measurethat will amend the constitution, I strongly urge you to obtain legalcounsel who will be able to assist you in meeting this standard. Suchcounsel will help you to avoid wasting time and effort in preparingproposals that cannot be certified.
If you should choose to clarify the problems discussed above and resubmit your proposed amendment, along with a proposed popular name and ballot title, I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh