Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted four similar measures, three of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. 2001-110, 2001-095 and 2001-074. On May 29, 2001, I revised and certified the popular name and ballot title you submitted, as evidence by Op. Att'y Gen. 2001-129. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO AUTHORIZE THE OPERATION OF GAMBLING BY BARRY LEE EMIGH AND HIS TRANSFEREES, BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, AND TO EXEMPT CERTAIN ITEMS FROM STATE AND LOCAL TAX
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED OR REGISTERED TO DO BUSINESS IN THE STATE; PROHIBITING PERSONS UNDER THE AGE OF 18 FROM PARTICIPATING IN BINGO AND RAFFLES; AUTHORIZING BARRY LEE EMIGH AND HIS HEIRS TO OPERATE GAMBLING ON WATER VESSELS ANCHORED ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN ANY COUNTY, CITY AND TOWN ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY; DEFINING GAMBLING AS THE RISKING OF MONEY ON A CHANCE BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEELS, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER AND PARI-MUTUEL WAGERING OF ANY KIND; AUTHORIZING THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES, WITHOUT LICENSE OR FEE BY THE STATE OR ANY SUBDIVISION THEREOF, DURING SUCH OPERATION OF GAMBLING ON WATER VESSELS ANCHORED ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHIN ANY COUNTY, CITIES AND TOWNS (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); AUTHORIZING BARRY LEE EMIGH OR HIS HEIRS TO HIRE PERSONS AND TO SUBCONTRACT WITH ANY INDEPENDENT CONTRACTOR TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; PROVIDING THAT THE GAMBLING OPERATION AND GAMBLING PROPERTY SHALL BE TRANSFERABLE AS AN INHERITANCE FROM BARRY LEE EMIGH TO HIS HEIRS AND THEIR HEIRS WITHOUT THE APPROVAL OF THE GENERAL ASSEMBLY AND WITHOUT ANY TAX OR FEE; AUTHORIZING BARRY LEE EMIGH OR HIS HEIRS TO TRANSFER THE GAMBLING OPERATION, IN WHOLE OR IN PART, TO ANY PERSON OR CORPORATION WITH THE APPROVAL OF A MAJORITY OF THE GENERAL ASSEMBLY; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PARTICIPATING IN ANY SUCH GAMBLING ON WATER VESSELS; PROVIDING FOR LEGAL SHIPMENT OF GAMBLING DEVICES; REQUIRING PAYMENTS TO THE STATE, COUNTY AND CITY IF APPLICABLE FROM GAMBLING NET PROFITS; DEFINING NET PROFIT AS THE AMOUNT OF MONEY EARNED FROM THE OPERATION OF GAMBLING AFTER OPERATIONAL COSTS ARE DEDUCTED FROM THE GROSS PROFIT WITH GROSS PROFIT BEING THE AMOUNT OF MONEY EARNED AS A PROFIT FROM GAMBLING OVER THE AMOUNT PAID AS GAMBLING LOSSES TO WINNERS; PROVIDING THAT OPERATIONAL COSTS INCLUDE THE COST OF GAMING DEVICES, CONTRACTS FOR WORK AND SERVICES, MAINTENANCE, CLEANING, SUBCONTRACTING OF THE GAMBLING OPERATION, INSURANCE, EMPLOYEE PAYROLL AND BENEFITS, LEASE OF PROPERTY TO INCLUDE WATER VESSELS, INTEREST ON LOANS, ADVERTISING AND PROMOTION AND COMPLIMENTARY ALCOHOLIC BEVERAGES; PROVIDING THAT AMOUNTS DEDUCTED SHALL NOT INCLUDE THE WATER VESSEL'S PURCHASE PRICE OR ANY COST RELATED TO THE VESSEL'S CONSTRUCTION OR RENOVATION OWNED BY THE GAMBLING OPERATOR; REQUIRING THAT 2% OF THE NET PROFIT FROM GAMBLING OPERATED ON ALL WATER VESSELS WITHIN THE STATE SHALL BE PAID ANNUALLY TO THE STATE'S GENERAL FUND; REQUIRING THAT 2% OF THE NET PROFIT FROM GAMBLING OPERATED ON EACH WATER VESSEL WITHIN A COUNTY SHALL BE PAID ANNUALLY TO THAT COUNTY'S GENERAL FUND; REQUIRING THAT 2% OF THE NET PROFIT FROM GAMBLING OPERATED ON EACH VESSEL WITHIN A CITY'S JURISDICTION SHALL BE PAID ANNUALLY TO THAT CITY'S GENERAL FUND; REQUIRING THAT 8% OF THE NET PROFIT FROM GAMBLING OPERATED ON ALL WATER VESSELS WITHIN THE STATE SHALL BE PAID ANNUALLY TO THE DEPARTMENT OF EDUCATION AND DISTRIBUTED (LESS REASONABLE COSTS OF DISTRIBUTION) WITHOUT AN APPROPRIATION REQUIREMENT AS FOLLOWS: 50% SHALL BE DISTRIBUTED TO THE PUBLICLY FUNDED K THROUGH 12 GRADE SCHOOLS BASED ON STUDENT ENROLLMENT AND 50% SHALL BE DISTRIBUTED TO ALL TEACHERS EMPLOYED BY PUBLICLY FUNDED INSTITUTES OF EDUCATION, INCLUDING BUT NOT LIMITED TO GRADES K THROUGH 12 AND COLLEGES AND UNIVERSITIES WITH EACH TEACHER PAID AN EQUAL AMOUNT; EMPOWERING THE LOCALLY ELECTED SCHOOL BOARDS TO REGULATE THE USE OF THE NET PROFIT PAID TO SCHOOLS; REQUIRING THAT 2% OF THE NET PROFIT FROM GAMBLING OPERATED ON ALL WATER VESSELS WITHIN THE STATE SHALL BE PAID ANNUALLY TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION FOR DISTRIBUTION TO THE CANVASSERS OF THIS AMENDMENT BASED UPON THE NUMBER OF VALID SIGNATURES THE CANVASSER OBTAINED TO PLACE THE AMENDMENT ON THE BALLOT AND PAID UNTIL THE CANVASSER'S DEATH; REQUIRING THAT THE GAMBLING OPERATOR ANNUALLY PROVIDE THE STATE AUDITOR WITH THE COMPLETE BOOKS AND ACCOUNTS OF THE GAMBLING OPERATION; REQUIRING THE STATE AUDITOR NOTIFY THE GAMBLING OPERATOR OF ANY DEFICIT PAYMENTS; PROHIBITING ANY OTHER TAX BY THE STATE OR ANY SUBDIVISION THEREOF ON GAMBLING REVENUE EXCEPT AS SPECIFIED IN THIS AMENDMENT; PROHIBITING THE LEVY OF ANY PROPERTY TAX, FEES OR ASSESSMENTS BY THE STATE OR ANY SUBDIVISION ON ANY WATER VESSEL OR THE CONTENTS THEREIN USED FOR GAMBLING; PROVIDING THAT BEGINNING ON THE FIRST TUESDAY OF DECEMBER, 2002, AFTER PASSAGE OF THIS AMENDMENT ANY ITEM A RECIPIENT OF FOOD STAMPS CAN PURCHASE WITH FOOD STAMPS AS PROVIDED UNDER 7 U.S.C.A. 2011
ET SEQ., COMMONLY CALLED THE FEDERAL" FOOD STAMP PROGRAM" SHALL BE EXEMPT FROM ANY NEW AND EXISTING STATE AND LOCAL GROSS RECEIPT SALES TAXES NOT USED FOR THE PURPOSE OF AN EXISTING BOND ISSUE; PROVIDING THAT THE REVENUE LOSS FROM THIS SALES TAX EXEMPTION SHALL NOT BE REPLACED BY THIS AMENDMENT (WHICH MAY RESULT IN THE LOSS OF GOVERNMENT SERVICES THAT WERE PAID FOR BY THE LOST REVENUE); MAKING THE PROVISIONS OF THE AMENDMENT SELF EXECUTING AND EFFECTIVE IMMEDIATELY UPON PASSAGE EXCEPT AS OTHERWISE PROVIDED IN THE AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 5 of your proposed amendment requires annual payments to canvassers for life, and provides in subsection 3 that "[u]pon the death of any canvasser previous to the first Tuesday of November of any year[,]" the Department of Finance and Administration (DFA) shall not make payment to the canvasser's estate, spouse, or heirs, but shall pay "the deceased canvasser's payment" to the state's general fund. This raises several ambiguities. First, I am uncertain what happens in the event a canvasser dies after the first Tuesday of November. It is unclear whether the deceased canvasser's payment would in that circumstance be paid to the estate, spouse, or heirs. If that is the case, a question is raised as to how long this payment to be made. This must be clarified for proper reflection in the ballot title.
 2. Again, under subsection three, if a canvasser dies before the first Tuesday in November and payment is to be made to the state's general fund, it is unclear how long this payment is to be made, i.e., whether it is a one-time only payment to the state or whether these payments continue for some period of time.
 3. You have added language in Section 6 regarding the possible loss of government services and the possibility of other tax increases as a result of the revenue loss from the sales tax exemption. I assume this was prompted by my inclusion in the ballot title certified in Op. Att'y Gen. 2001-129 of language in this regard concerning the possible loss of government services. While it is my opinion that this information should be included in the ballot title so that the voter is fully informed of the possible consequences of voting for this initiative (see Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000)), its inclusion in the text of the measure is unnecessary and may be misleading or confusing unless it is your intent to suggest that other taxes should be increased to replace the revenue loss. This comment in the text on the possible consequences of your measure is ambiguous, in my view.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General