Mr. Barry Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted ten similar measures, eight of which I rejected due to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for two similar measures, as evidenced by Op. Att'y Gen. Nos. 2001-129 and 2001-196. You have since made additional changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT TO AUTHORIZE BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, AUTHORIZING BARRY LEE EMIGH TO ORGANIZE A CORPORATION TO EXCLUSIVELY OPERATE, HIRE PERSONS AND SUBCONTRACT INDEPENDENT CONTRACTOR(S) TO OPERATE FOR PROFIT GAMBLING AND AUTHORIZING THE GENERAL ASSEMBLY TO PROVIDE A COMMISSION TO OPERATE LOTTERIES AND TO REGULATE BINGO, RAFFLES AND GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED OR REGISTERED TO DO BUSINESS IN THE STATE WITH NO PERSON UNDER AGE 18 PERMITTED TO PLAY BINGO OR RAFFLES; PROVIDING EACH SIGNATURE THE SECRETARY OF STATE COUNTS AS VALID TO PLACE THIS AMENDMENT ON THE BALLOT WITH EXCEPTION OF A CANVASSER'S SIGNATURE ON A PETITION AS PETITIONER WITH THEIR SIGNATURE ON THAT PETITION AS CANVASSER SHALL BE COUNTED AS 2 SHARES OF STOCK WITH EACH SHARE OF STOCK BEING 1 VOTE WITH BARRY LEE EMIGH AS AUTHOR AND SPONSOR OF THIS AMENDMENT RECEIVING 1 OF 2 SHARES OF STOCK AS A STOCK HOLDER FOR EACH SIGNATURE A CANVASSER OBTAINS WITH THE CANVASSER RETAINING THE OTHER SHARE OF STOCK AS A STOCK HOLDER WITH ALL SHARES OF STOCK AS PROVIDED HERIN [HEREIN] BEING FILED AS "PREFERRED STOCK" WITH THE STATE SECURITIES DEPARTMENT UPON INCORPORATION IN THE STATE OF THE "DIAMOND STATE CASINOS, LIMITED" BY THE INCORPORATOR; REQUIRING BARRY LEE EMIGH AS THE AUTHOR AND SPONSOR OF THIS AMENDMENT TO ORGANIZE A CORPORATION AS THE INCORPORATOR TO BE ENTITLED THE "DIAMOND STATE CASINOS, LIMITED" WITH THE RIGHT OF BARRY LEE EMIGH FOR ANY REASON TO APPOINT ANOTHER PERSON TO REPLACE HIM AS THE INCORPORATOR; AUTHORIZING THE INCORPORATOR TO INITIALLY WRITE THE "BY LAWS" OF THE CORPORATION AND TO APPOINT 6 PERSONS AS CORPORATE BOARD DIRECTORS TO ESTABLISH THE BOARD OF DIRECTORS OF THE "DIAMOND STATE CASINOS, LIMITED"; REQUIRING THE SECRETARY OF STATE TO INCORPORATE IN THE STATE THE "DIAMOND STATE CASINOS, LIMITED" UPON RECEIPT OF THE APPOINTED CORPORATE BOARD DIRECTORS NAMES, "BY LAWS, AND FILED APPLICATION FOR "PREFERRED STOCK" REGISTRATION BY THE INCORPORATOR; REQUIRING THE CORPORATE BOARD DIRECTORS UPON INCORPORATION IN THE STATE TO ELECT THOSE REQUIRED CORPORATE EXECUTIVE OFFICERS AND WITHIN ONE YEAR TO FULLFILL [FULFILL] ANY AND ALL OTHER REQUIREMENTS THE SECRETARY OF STATE REQUIRES OF ALL OTHER CORPORATIONS IN THE STATE TO INCLUDE PROVIDING THE STOCK HOLDERS WITH THE REGISTRATION OF THE "PREFERRED STOCK"; REQUIRING THE "DIAMOND STATE CASINOS, LIMITED" AS A CORPORATION TO ABIDIE [ABIDE] BY ALL THE RULES, LAWS AND REGULATIONS OF THE STATE REQUIRED OF ALL CORPORATIONS INCORPORATED IN THE STATE NOT OTHERWISE PROVIDED FOR DIFFERENTLY WITHIN THE PROVISIONS OF THIS AMENDMENT; EMPOWERING THE STOCK HOLDERS AT ANY TIME AFTER INCORPORATION IN THE STATE OF THE "DIAMOND STATE CASINOS, LIMITED" TO DIMISS [DISMISS] AND ELECT ANY ONE OR MORE OF THE CORPORATE BOARD DIRECTORS BY A MAJORITY VOTE OF VOTING STOCK HOLDERS WITH ALL OTHER RIGHTS, AND DIVIDEND PAYMENTS PROVIDED THE STOCK HOLDERS AS PROVIDED BY THE LAWS, RULES AND REGULATIONS OF THE STATE; AUTHORIZING ONLY THE "DIAMOND STATE CASINOS, LIMITED" UPON INCORPORATION IN THE STATE TO OPERATE, HIRE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITH GAMBLING OPERATED WITHIN THE INTERIOR AREA OF NOT MORE THAN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CRAWFORD, JEFFERSON, PULASKI, GARLAND, MILLER, CRITTENDEN, MISSISSIPPI, BENTON AND QUACHITA WITH SUCH STRUCTURE LOCATED WITHIN THOSE COUNTIES OR WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH NO PERSON UNDER AGE 21 PERMITTED TO GAMBLE; AUTHORIZING ONLY THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF, WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING ONLY DURING THE OPERATION OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED) WITH NO PERSON UNDER AGE 21 PERMITTED TO CONSUME ALCOHOLIC BEVERAGES; REQUIRING THE "DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING TO PAY ANY AND ALL STATE AND LOCAL TAXES AS APPLICABLE AND TO OBTAIN AND PAY FOR ALL OTHER LICENSES AND PERMITS NOT EXEMPTED WITHIN THE PROVISIONS OF THIS AMENDMENT AS REQUIRED; AUTHORIZING THE LEGAL SHIPMENT OF GAMING DEVICES BY THE "DIAMOND STATE CASINOS, LIMITED" AS A CORPORATION AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING BY THE "DIAMOND STATE CASINOS, LIMITED"; DEFINING "GAMBLING" AS THE RISKING OF MONEY ON A CHANCE BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEELS, ANY KIND OF SLOT MACHINES, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS AND DICE USED IN ANY MANNER; DEFINING "STRUCTURES" AS THE PLURAL OF STRUCTURE WITH STRUCTURE BEING ANY KIND AND SIZE OF BUILDING TO INCLUDE ANY ATTACHED ADDITIONS TO BE CONSIDERED PART OF THAT BUILDING AND TO INCLUDE WITHIN THIS DEFINITION ANY KIND AND SIZE OF ANCHORED WATER VESSEL AS A STRUCTURE; EMPOWERING THE GENERAL ASSEMBLY BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES TO PROVIDE AND REGULATE A COMMISSION TO REGULATE BINGO AND RAFFLES OPERATED BY NON-PROFIT ORGANIZATIONS AND TO REGULATE GAMBLING OPERATED BY THE" DIAMOND STATE CASINOS, LIMITED" AND THOSE PERSONS HIRED AND SUBCONTRACTED AS INDEPENDENT CONTRACTORS TO OPERATE GAMBLING WITH SUCH COMMISSION REGULATED AND EMPOWERED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY TO OPERATE A STATE LOTTERY IN ANY MANNER AND TO COOPERATE TO OPERATE ANY NUMBER OF OTHER LOTTERIES IN ANY MANNER IN COMBINATION WITH ANY OTHER STATE AND STATES; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY AND ANY AND ALL STATE OR LOCAL RULE MAKING AUTHORITIES TO MAKE ALL OTHER AND FURTHER LAWS AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT;
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Pluggev. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic ActionCommittee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to several ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2, subsection 3, of your proposed amendment states in relevant part that "only the `Diamond State Casinos, Limited' as a corporation shall be permitted to operate gambling, . . . with gambling operated within the interior areas of not more than one structure within each of the following counties. . . ." In my view, it is not entirely clear whether your amendment establishes Diamond State Casinos, Limited as the only legal operator of gambling in the state. I believe this language could be construed to establish Diamond State Casinos, Limited as the only authorized operator of gambling (as defined in the amendment) within the named counties, leaving the possibility of other gambling operations authorized by the General Assembly. If, in fact, you intend to prevent any other gambling operations in the state, this should be clearly stated for proper reflection in the ballot title. Although current law prevents the General Assembly from authorizing a "lottery" (see Ark. Const. art. 19, § 14), gambling is currently subject to state regulation. Your amendment would therefore effect a significant change in current law of which the voters should be made aware.
 2. The definition of "gambling" in your proposed measure also raises questions regarding the extent of the amendment's effect on current gaming operations, as well as on the General Assembly's regulatory authority with respect to gambling generally. Your measure defines "gambling" as:
 "[T]he risking of money between two, or more, persons on a chance where one must be loser and the other gainer with commonly called gaming devices to include any kind of roulette wheel, slot machines of any kind, gaming tables of any kind for the use of cards and dice used in any manner."
 Although you have now, with this definition, deleted any reference to pair-mutuel wagering (compare Op. Att'y Gen. 2002-001), I believe some uncertainty nevertheless remains in this regard. If you in fact do not intend to amend or repeal current law with respect to horse racing or dog racing and pari-mutuel wagering thereon, this should in my view be clear from the text of your measure. I am unable to conclusively resolve this issue for proper reflection in the ballot title based upon the current text.
 It must also be noted that your definition of gambling varies somewhat from the common understanding of the term "gambling" as developed by the courts, i.e.: "the risking of money, between two or more persons, on a contest or chance of any kind, where one must be loser and the other gainer." See Portis v. State, 27 Ark. 360 (1872) and State v. Torres, 309 Ark. 422, 831 S.W.2d 903 (1992). As you can see, this common law definition appears to be broader than your definition. I believe your definition could arguably be construed as limited to activities involving the use of "gaming devices," whereas there is no reference to such devices under the court's definition. It has also been stated with regard to the court's definition of gambling that some games depend altogether on skill, others upon chance, and others are a mixed nature. Portis, supra at 362. I am therefore uncertain whether the definition under your amendment, which refers to "a chance," would include any games involving skill. A question thus arises regarding the effect of your amendment on other forms of gambling, (e.g., pari-mutuel wagering, as discussed above; betting on any game of hazard or skill (see A.C.A. § 5-66-113)). To summarize this point, I am uncertain regarding the effect of your amendment on the General Assembly's regulatory authority in connection with other activities that could fall within the common understanding of "gambling" that has been developed through Arkansas case law.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh