Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted three similar measures that I rejected due primarily to ambiguities in the text of your proposed amendments. See Op. Att'y Gen. Nos. 2000-288, 2000-239 and 2000-215. You have made revisions to your proposed amendment and now submit the following popular name and ballot title for my certification:
 Popular Name OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS, AND OPERATION OF CASINO GAMBLING ON WATER VESSLES [SIC]
 Ballot Title AN AMENDMENT PROVIDING FOR THE IMMEDIATE OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY BY COVERING THE NUMBERS ON THE CARDS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AS A VOLUNTARY OPTION OF OPERATION BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; PROVIDING FOR THE IMMEDIATE OPERATION OF RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE OR PRIZES AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS A VOLUNTARY OPTION OF OPERATION BY ANY NON-PROFIT ORGANIZATION INCORPORATED IN THE STATE OR REGISTERED TO DO BUSINESS IN THE STATE; PROVIDING FOR THE IMMEDIATE OPERATION OF GAMBLING AND GAMING DEVICES AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMBLING AND GAMING DEVICES TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER AND GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNNER [SIC] AS A VOLUNTARY OPTION OF OPERATION OF ANY ONE, OR MORE, OR ALL OF THE AFOREMENTIONED GAMBLING AND GAMING DEVICES TO BE OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE" ONLY ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES WITHOUT LICENSE OR FEE ON ANY DAY FOR THE WHOLE OF A 24 HOUR DAY WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES ONLY ON THOSE WATER VESSELS OPERATING GAMBLING ONLY DURING THE OPERATION OF GAMBLING WITHOUT LICENSE OR FEE WITHIN ANY COUNTY OF THE STATE WITH EXCEPTION OF EXCLUSION AS PROVIDED HEREIN; EXEMPTING THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE" OWNED BY BARRY LEE EMIGH FROM THE PROVISIONS OF A.C.A. SECTION 4-70-201
THRU -206; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES ONTO ANY VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE"; PROVIDING NO PERSON UNDER THE AGE OF 21 SHALL BE ALLOWED TO PARTICIPATE IN GAMBLING ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE"; PROVIDING ANY COUNTY WITH THE LOCAL BALLOT OPTION UNDER THE PROVISIONS OF AMENDMENT 7 OF THE ARKANSAS CONSTITUTION TO ACCEPT OR REJECT THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE"; PROVIDING THE OPERATION OF GAMBLING AND GAMING DEVICES ON ANY WATER VESSEL ON A NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN ANY COUNTY OF THE STATE SHALL BE TRANSFERABLE FROM BARRY LEE EMIGH TO HIS HEIRS, THEIR HEIRS AND SO ON, AND TO PROVIDE SUCH TRANSFER OF AN INHERITANCE TO BE WITHOUT TAXATION OR FEE BY THE STATE ON THE PROPERTY USED FOR THE PURPOSE OF GAMBLING; PROVIDING FOR THE TRANSFER OF THE OPERATION OF GAMBLING AND GAMING DEVICES BY BARRY LEE EMIGH OR HIS HEIRS, THEIR HEIRS AND SO ON TO ANY OTHER PERSON, COMPANY OR CORPORATION TO BE APPROVED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY; PROVIDING A 16% TAX ON THE NET GAMING REVENUE TO BE PAID BY BARRY LEE EMIGH OR HIS HEIRS, THEIR HEIRS AND SO ON, OR BY ANY PERSON, COMPANY OR CORPORATION HAVING THE TRANSFERRED OWNERSHIP OF THE GAMBLING OPERATION APPROVED BY A MAJORITY VOTE OF APPROVAL OF BOTH HOUSES OF THE GENERAL ASSEMBLY TO BE PAID TO THE DEPARTMENT OF FINANCE AND ADMINISTRATION ON THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR AND ALLOCATED AS FOLLOWS: 6% OF THE NET GAMING REVENUE TO BE PAID TO THE STATE'S GENERAL FUND; 6% OF THE NET GAMING REVENUE TO BE PAID TO THE COUNTY'S GENERAL FUND FROM EACH VESSEL OPERATING GAMBLING AND GAMING DEVICES WITHIN THAT COUNTY, AND TO BE DIVIDED EQUALLY WHEN A VESSEL IS OPERATING WITHIN THE JURISDICTION OF A CITY WITH 3% BEING PAID TO THE CITY'S GENERAL FUND AND 3% PAID TO THE COUNTY'S GENERAL FUND; 18% OF THE NET GAMING REVENUE TO BE DIVIDED BY THE NUMBER OF COUNTIES NOT HAVING GAMBLING OPERATED WITHIN THOSE COUNTIES AND PAID TO EACH OF THOSE COUNTY'S GENERAL FUNDS; 70% OF THE NET GAMING REVENUE TO BE DIVIDED BY THE NUMBER OF STUDENTS ATTENDING ANY, AND ALL, PUBLICLY FUNDED INSTITUTES OF EDUCATION FROM THE PREVIOUS YEAR AND PAID TO EACH INSTITUTE BASED UPON THE NUMBER OF STUDENTS HAVING BEEN IN ATTENDANCE AT THAT INSTITUTE FROM THE PREVIOUS YEAR; AUTHORIZING THE DEPARTMENT OF FINANCE AND ADMINISTRATION TO DISTRIBUTE THE ANNUAL NET GAMING REVENUE AS PROVIDED HEREIN WITHIN 30 WORKING DAYS AFTER THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR; EXCEPT AS SPECIFIED IN THIS AMENDMENT THERE SHALL BE NO OTHER TAX OF ANY KIND LEVIED BY THE STATE ON THE REVENUE DERIVED FROM THE OPERATION OF GAMBLING ON ANY WATER VESSEL OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE "ARKANSAS CASINO BOAT LINE"; NO PROPERTY TAX, FEES, OR ASSESSMENT OF ANY KIND SHALL BE LEVIED BY THE STATE, OR ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON ANY WATER VESSEL AND THE CONTENTS THEREIN USED FOR THE OPERATION OF GAMBLING ON ANY NAVIGABLE WATER WAY OR PUBLIC LAKE WITHIN THE STATE OPERATED BY BARRY LEE EMIGH UNDER THE ASSUMED BUSINESS NAME OF THE" ARKANSAS CASINO BOAT LINE"; DEFINING THE NET GAMING REVENUE AS THE AMOUNT OF MONEY PROFITTED [SIC] BY GAMBLING AND GAMING DEVICES AFTER THE PAYMENT OF GAMING LOSES, ANY AND ALL OPERATIONAL COSTS TO INCLUDE, BUT NOT LIMITED TO, EMPLOYEE PAYROLL AND BENEFITS, UTILITIES, LEASES OF PROPERTY AND SERVICES, COMPLIMENTARY ALCOHOLIC BEVERAGES, ADVERTISING AND PROMOTION AND ALL FEDERAL TAXES; PROVIDING FOR THE ANNUAL AUDITING OF THE BOOKS, RECORDS AND FINANCIAL AFFAIRS BY THE STATE AUDITOR ON THE FIRST TUESDAY OF NOVEMBER OF EACH YEAR; PROVIDING THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE THE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and your proposed ballot title because the text of your proposed measure contains certain ambiguities that render the measure difficult to understand, and therefore incapable of being fairly and accurately summarized. I refer to the following problems:
 1. Section Two of your proposed amendment, under subsection (1), refers to Barry Lee Emigh as "owner under the assumed business name of the `Arkansas Casino Boat Line[.]'" Subsection (1)(a) then states that "[t]he assumed business name of the `Arkansas Casino Boat Line' owned
by Barry Lee Emigh, as provided in (1) of this Section, shall be exempt from the provisions of A.C.A. Section 4-70-201 thru -206." (Emphasis added). This representation, i.e., that you "own" the name under which you will be doing business, is potentially misleading to the voter if you have not in fact obtained any proprietary interest in this name through established legal channels, or obtained any trademark rights in the name through long and continuous use. To the extent you in fact intend to grant yourself a trademark right in this name, then I must note that you are attempting by state constitutional amendment to do something prohibited by federal legislation.
 2. You will recall that I have cautioned you previously against suggesting that the exemption from A.C.A. §§ 4-70-201—206 extends to the assumed business name under which you intend to operate. See Op. Att'y Gen. 2000-288 at 7. As I have stated before, you will be exempt because these Code sections apply to persons. Section Two (1)(a) of your proposed measure continues to deflect the emphasis from you to the assumed name. This, in my view, is misleading.
 3. Section Two (2) authorizes you to transfer to your heirs" in part, or as a whole," the "assumed business name and ownership of the gambling operation. . . ." The intent of this language is unclear. I am uncertain whether the intent is to authorize the transfer of the assumed name apart from the gambling operation. Compare Section Two (4). This ambiguity should be clarified for proper reflection in the ballot title.
 4. Section Two (4) requires a vote of the General Assembly to approve any transfer of ownership of the gambling operation, but it states in part that this shall not include "any contracted work, [or] contracts for services. . . ." If the intent of this exception is to authorize you, as owner of the gambling operation, to contract for services without a vote of the General Assembly, then I believe this is must be made very clear in the text and in the ballot title. It is my opinion that this would be viewed as an essential fact which would give the voter serious ground for reflection. See Bailey v. McCuen, supra.
 5. Section Two (5) provides a local ballot option in any county with respect to "the gambling operation on any water vessel . . . as provided in (1) and (1)(a) of this Section. . . ." Your proposed ballot title contains similar language, although it refers to gambling "operated by Barry Lee Emigh . . ." The ballot title should be corrected to reflect the possibility that someone else may own the gambling operation. See Section Two (5) of the text. More importantly, however, an ambiguity arises under this subsection regarding the precise issue that may be placed before the voters in a local option election. According to the text, the voters may accept or reject" the gambling operation on any water vessel. . . ." This could be construed to mean that the local option issue can focus on a particular gambling operation, i.e., the voters could be asked to accept or reject gambling on a particular water vessel. If this was not the intent, the language should be modified accordingly for proper reflection in the ballot title.
 6. Section Four (1), part of the "Taxation" section, imposes a 16% tax on the net revenues "earned from gambling and gaming devices operated within the state from each water vessel. . . ." The following subsections then, presumably, address the allocation of the tax. See
Section Four (1)(a) through (e). The language is confusing, however, in that these subsections require certain percentage allocations "of the annual net gaming revenue from each water vessel." There is no reference to allocation of the "tax." This may simply be an error in draftsmanship, in which case the error should be corrected to avoid voter confusion or misunderstanding.
 7. Section Four (5) states that there shall be no property tax or assessment of any kind "on any water vessel and the contents therein operating gambling on any navigable water way or public lake . . . operated by Barry Lee Emigh as owner. . . ." This sentence is confusing, at best, due to the ambiguous correlation between subjects and verbs. Although I assume that you do not mean to suggest that the water vessel is operating gambling, this should be clarified. But read literally, this language also suggests that the property tax exemption extends only to the water vessel and the contents belonging to the vessel itself. This appears to be contrary to the language of your proposed ballot title, however, wherein it states that no property tax shall be levied "on any water vessel and the contents therein used for the operation of gambling. . . ." This disconnect between the ballot title and the text, given the ambiguous wording of this subsection, prevents me from substituting a title.
As I have pointed out to you on previous occasions, my office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. § 7-9-107
(c). I strongly urge in this regard that you refrain from submitting anyfurther measures until you have obtained legal counsel to assist you indrafting a measure that meets the requirements of law. You have now resubmitted four variations of this proposal, each time with significant additions or modifications beyond those problems and ambiguities that have prevented certification. As I have previously acknowledged (see Op. Att'y Gen. 2000-280), I recognize and support your right of initiative under Amendment 7 to the Arkansas Constitution. However, this right will be meaningless if you are unable to submit a measure that can be fairly and adequately summarized.
Sincerely,
MARK PRYOR Attorney General