Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for three similar measures, as evidenced by Ops. Att'y Gen. Nos.2002-140; 2001-196; and 2001-129. You have since made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING BARRY LEE EMIGH, HAROLD GLEN MARTIN AND WILLIAM ROBERT AUSTIN OR THEIR TRANSFEREES TO OPERATE GAMBLING, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE TO OPERATE BINGO AND RAFFLES; EMPOWERING THE GENERAL ASSEMBLY TO FACILITATE THE STATE'S OPERATION OF A LOTTERY OR LOTTERIES WITH THE STATE-WIDE SALE OF LOTTERY TICKETS TO INCLUDE THE STATE'S OPERATION OF SUCH LOTTERIES IN COOPERATION WITH LOTTERIES OPERATED BY AND IN COMBINATION BY OTHER STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 AFFECTING GAMBLING; AUTHORIZING BARRY LEE EMIGH TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF BENTON, CRAWFORD, CRITTENDEN, MILLER AND PULASKI WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF BAXTER, MILLER, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING WILLIAM ROBERT AUSTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF GARLAND, JEFFERSON, OUACHITA AND MISSISSIPPI WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING THE GAMBLING OPERATORS(S), THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL, TAX OR FEE BY THE STATE, COUNTIES, CITIES TOWNS, AND AGENCIES THEREOF; EMPOWERING THE GENERAL ASSEMBLY UNLESS PROVIDED DIFFERENTLY TO REGULATE BINGO, RAFFLES, GAMBLING AND THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES IN CONNECTION WITH GAMBLING; REQUIRING THE GAMBLING OPERATOR(S) PAY 11% OF THE "PROFIT" TO THE STATE'S GENERAL FUND FROM EACH GAMBLING OPERATION, 11% OF THE "PROFIT" TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS OPERATED AND 11% OF THE "PROFIT" TO A CITY OR TOWN'S GENERAL FUND IN WHICH GAMBLING IS OPERATED; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF, UNLESS PROVIDED DIFFERENTLY FROM TAXING ANY STRUCTURE AND CONTENTS THEREIN USED FOR GAMBLING AND REVENUES DERIVED FROM BINGO, RAFFLES AND GAMBLING; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF, FROM REQUIRING ANY LICENSE, FEE OR PERMIT TO OPERATE BINGO, RAFFLES, GAMBLING AND TO SELL AND SERVE ALCOHOLIC BEVERAGES IN CONNECTION WITH GAMBLING TO INCLUDE THE TRANSPORT AND USE OF EQUIPMENT USED TO OPERATE BINGO, RAFFLES AND GAMBLING; PROVIDING FOR THE SHIPMENT OF GAMBLING DEVICES; DEFINING" BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF WHICH THE GENERAL ASSEMBLY SHALL REGULATE, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS BARRY LEE EMIGH, HAROLD GLEN MARTIN AND WILLIAM ROBERT AUSTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING" PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING TAXES, FEES AND OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Applying the above precepts, it is my conclusion that a more suitable, complete, and correct popular name and ballot title should be substituted for those proposed. The following is hereby certified in order to insure that, when construed together, the popular name and ballot title accurately set forth the purpose of the proposed amendment:
 Popular Name AN AMENDMENT AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS, GAMBLING BY BARRY LEE EMIGH, HAROLD GLEN MARTIN AND WILLIAM ROBERT AUSTIN AND THEIR TRANSFEREES, AND STATE-OPERATED LOTTERIES
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING THE OPERATION OF BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; EMPOWERING THE GENERAL ASSEMBLY TO FACILITATE THE STATE'S OPERATION OF A LOTTERY OR LOTTERIES, INCLUDING LOTTERIES OPERATED IN COOPERATION WITH OTHER STATES, WITH THE STATE-WIDE SALE OF LOTTERY TICKETS THEREBY SIGNIFICANTLY CHANGING THE LOTTERY PROHIBITION CONTAINED IN ARKANSAS CONSTITUTION ARTICLE 19, SECTION 14; AUTHORIZING BARRY LEE EMIGH TO OPERATE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF NOT MORE THAN ONE STRUCTURE LOCATED IN EACH OF THE FOLLOWING COUNTIES: BENTON, CRAWFORD, CRITTENDEN, MILLER AND PULASKI; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF NOT MORE THAN ONE STRUCTURE LOCATED IN EACH OF THE FOLLOWING COUNTIES: BAXTER, MILLER, PULASKI AND SEBASTIAN; AUTHORIZING WILLIAM ROBERT AUSTIN TO OPERATE AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF NOT MORE THAN ONE STRUCTURE LOCATED IN EACH OF THE FOLLOWING COUNTIES: GARLAND, JEFFERSON, OUACHITA AND MISSISSIPPI; DEFINING" STRUCTURE" TO INCLUDE BUILDING ADDITIONS AND ATTACHMENTS AND ANCHORED WATER VESSELS; AUTHORIZING THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOL ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR GAMBLING, INCLUDING STRUCTURES LOCATED IN COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED; PROVIDING THAT THE GAMBLING OPERATION IN EACH COUNTY IS TRANSFERABLE TO ANY PERSON, COMPANY, OR CORPORATION WITHOUT APPROVAL, TAX OR FEE OF ANY KIND BY THE STATE, COUNTIES, CITIES, TOWNS, OR AGENCIES THEREOF; REQUIRING THE ANNUAL PAYMENT TO THE STATE'S GENERAL FUND OF 11% OF THE "PROFIT" EARNED FROM EACH GAMBLING OPERATION, ANNUAL PAYMENT TO THE COUNTY OF 11% OF THE "PROFIT" EARNED WITHIN A COUNTY, AND ANNUAL PAYMENT TO A CITY OR TOWN OF 11% OF THE "PROFIT" EARNED WITHIN THAT CITY OR TOWN; DEFINING "PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING ANY FEDERAL TAXES AND FEES AND ALL OPERATIONAL COSTS FROM THE GROSS EARNINGS, WITH GROSS EARNINGS BEING THE TOTAL AMOUNT OF MONEY EARNED FROM GAMBLING AFTER DEDUCTING THE MONEY PAID AS A LOSS TO WINNERS; INCLUDING AS "OPERATIONAL COSTS" THE COST OF CONTRACTS FOR WORK AND SERVICES, EMPLOYEE-RELATED COSTS, COSTS ASSOCIATED WITH THE ACQUISITION AND MAINTENANCE OF PROPERTY AND STRUCTURES, PROFESSIONAL FEES, COMPLIMENTARY ALCOHOL, AND CONTRIBUTIONS TO NON PROFIT ORGANIZATIONS; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF FROM TAXING REVENUES DERIVED FROM BINGO, RAFFLES AND GAMBLING OR ANY STRUCTURE OR THE CONTENTS THEREIN USED FOR GAMBLING; PROHIBITING THE STATE, COUNTIES, CITIES, TOWNS, AND AGENCIES THEREOF FROM REQUIRING ANY LICENSE, FEE OR PERMIT TO OPERATE BINGO, RAFFLES, GAMBLING OR TO SELL AND SERVE ALCOHOL IN CONNECTION WITH GAMBLING; VESTING THE GENERAL ASSEMBLY, UNLESS PROVIDED OTHERWISE BY THIS AMENDMENT, WITH THE POWER TO REGULATE BINGO, RAFFLES, GAMBLING AND THE SALE AND SERVICE OF ALCOHOL IN CONNECTION WITH GAMBLING; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDING MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT EXCLUDING THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THE AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THE AMENDMENT.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
Enclosure